**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MELLESA SINGH-SAHADEO, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| NASRA ENTERPRISES, LLC, | : | |
| d/b/a ASHLEY HOMESTORE and | : | |
| "ASHLEY," | : | JANUARY 18, 2025 |
| | : | |
| Defendant. | : | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, codified as amended at 42 U.S.C. § 12101 et seq.; Connecticut General Statutes; and Connecticut State Law.

2. The jurisdiction of this Court is founded upon 28 U.S.C. § 1331 (federal question) and the provisions of 28 U.S.C. § 1343 (federal civil rights actions).

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U.S.C. § 1367, as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

-1-

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. Plaintiff received a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities on January 7, 2025.

7. Plaintiff received a Notice of Right to Sue.

**THE PARTIES**

8. Plaintiff Mellesa Singh-Sahadeo, also known as Mellesa Singh, is a female individual. Plaintiff is a resident and domiciliary of the City and County of New Haven, Connecticut.

9. Defendant Nasra Enterprises, LLC, is a limited liability corporation created and organized under the laws of the State of Connecticut. Defendant operates a furniture and home décor store under the name "Ashley Homestore" or "Ashley," located at 56 Costello Road, Newington, Hartford County, Connecticut ("the Store"). Defendant also operates other Ashley Homestore locations besides the Newington site. Defendant's business address is located in Enfield, Hartford County, Connecticut.

10. Defendant employs more than 15 employees.

**FACTUAL ALLEGATIONS**

11. On October 29, 2022, Singh was hired by Defendant as General Manager for Defendant's Newington Ashley Homestore location.

12. Plaintiff was hired by Sami Abunasra ("Abunasra"), a member, owner, and managing director of Defendant.

13. Abunasra hired Plaintiff to bring structure and organization to the Newington showroom in both the sales and customer service departments.

-2-

14. As part of her duties with Defendant, Plaintiff was responsible for hiring, training, and developing store personnel, executing training plans and strategies, leading and mentoring the sales team, providing feedback for Sales Associates as they met store targets, assisting Sales Associates with customer interactions, and ensuring customers received a high level of customer service.

15. As General Manager, Plaintiff was responsible for staffing the store, including hiring new Sales Associates and Customer Service Associates.

16. Plaintiff managed the store without day-to-day input from Abunasra.

17. During Plaintiff's employment, Singh hired many employees, increased sales, and improved processes at the Store.

18. Plaintiff hired ten Sales Associates, including Moe Razavi ("Razavi").

19. Razavi is a male individual.

20. In February or March 2023, Abunasra told Plaintiff that he was hiring a Vice President of Sales to assist him in managing stores.

21. In March 2023, Abunasra hired Gerard Collins ("Collins") as Vice President of Sales for Defendant.

22. When Collins began, he started making changes in processes despite not having a complete understanding of the processes or knowing why they were in place.

23. Plaintiff nevertheless was open to making changes to processes at the Store.

24. As Plaintiff explained processes to Collins, Collins would respond that it was not the same at his previous jobs.

25. Collins told Plaintiff, "Only the guys understand how this field works."

-3-

26. Collins also told Plaintiff that Abunasra hired Collins because he was a man.

27. When in the store, Collins frequently told female Sales Associates, including Michelle Baxter, Lauren Carey, Tandica Scott, and Nanda Benedict, that they "needed to be more like Moe," referring to Razavi.

28. Collins created new processes for the operation of the Store that changed the successful processes Plaintiff had implemented.

29. In April or May 2023, Collins told Plaintiff to screen applicants and then send promising applications to him so that he could conduct a second interview and make the hiring decision.

30. Prior to Collins' start, Plaintiff would interview and hire new employees, after advising Abunasra of the opportunity to give the potential hire a second interview. Abunasra, however, rarely conducted second interviews.

31. In May 2023, Collins met with Plaintiff. Collins told Plaintiff that he wanted her to terminate the employment of three female Sales Associates – Carey, Baxter, and Jane Thompson – and find replacements for them.

32. Like Carey and Baxter, Thompson is female.

33. Plaintiff objected to terminating the three women because she found their job performance to be satisfactory.

34. Collins told Plaintiff that Carey, Baxter, and Thompson had poor sales performance, were on their cell phones too much, and were not "aggressive" enough.

35. Plaintiff attempted to explain that the decrease in sales was due to a drop in traffic and volume from the previous year and reflected the current economy.

-4-

36. Collins told Plaintiff that she was making excuses.

37. Plaintiff advised Collins that if she terminated Carey, Baxter, and Thompson immediately, she would not have enough Sales Associates to staff the Store on a daily basis.

38. Collins told Plaintiff that he did not care and that she was to start interviewing immediately.

39. Collins told Plaintiff to "hire more Moe's."

40. Plaintiff understood Collins' demand to mean that she should hire more male Sales Associates.

41. During her employment, in or after March 2023 Plaintiff made numerous email complaints about Collins' sex-based discriminatory treatment to Defendant's Human Resources Representative, Annette Mesa.

42. Plaintiff learned that other female employees also had made complaints to Mesa about Collins.

43. Mesa admitted to Plaintiff that Mesa herself had complained about Collins to Abunasra.

44. Mesa told Plaintiff that any reports she took to Abunasra about discriminatory treatment of female employees by Collins were ignored.

45. Mesa told Plaintiff that Abunasra ended his conversation with Mesa by saying that Collins was in charge and to take complaints to Collins.

46. Mesa was ordered to take complaints about Collins to Collins for investigation and disposition.

47. During the time that Plaintiff attempted to hire new Sales Associates, Baxter, Thompson and another female employee, Cynthia Dugay, resigned their positions with Defendant.

48. Baxter, Thompson, and Dugay each told Plaintiff that they were being mistreated and belittled by Collins, and no longer wished to work in such an environment.

49. Shortly after their resignations, Collins called Plaintiff and told her that Abunasra wanted Carey terminated because Carey had asked, in a company group chat, to receive a $50.00 gift card prize that she had won for her performance during a contest held over a weekend.

50. Collins told Plaintiff to terminate Carey immediately for "poor performance."

51. Plaintiff objected to Carey's termination but was unable to override this decision.

52. Plaintiff continued to interview potential new hires, and at Collins' request, forwarded him applicants that she thought showed potential.

53. Collins refused to hire any of the applicants that Plaintiff sent for his approval.

54. Collins told Plaintiff that one applicant was too young, one looked to be under the age of 25, and one did not look "agile enough."

55. Under Connecticut law, it is illegal to discriminate against an employee on the basis of age, regardless of the age of the employee.

56. Collins decided to ask Razavi to recruit Razavi's former co-workers.

57. Collins told Razavi that he would pay Razavi a bonus for each referral and would guarantee a higher hourly rate of pay for eight weeks.

58. Collins planned to pay Razavi's referrals at a higher rate of pay than that earned by other Sales Associates.

59. Razavi referred Siamak Zadeh, a male individual, to Collins.

60. Collins hired Zadeh as a Sales Associate for the Store on May 3, 2023.

61. Zadeh was paid a guaranteed $25.00 per hour.

62. Plaintiff was permitted to hire a female applicant, Nanda Benedict, as a Sales Associate, on May 3, 2023.

63. Benedict was paid a guaranteed $17.00 per hour.

64. In May 2023, Collins told Plaintiff that he wanted to hire a Sales Manager that would report to her.

65. One week later, Collins told Plaintiff that he hired Robert Hernandez as Sales Manager.

66. Plaintiff asked Collins why she was not involved in the interview process.  Collins told Plaintiff that Hernandez interviewed with Abunasra and Collins.  Collins added that he thought a third interview was excessive.

67. On May 8, 2023, Hernandez started employment with Defendant.

68. During Hernandez's training, Plaintiff noticed that Hernandez reported to Collins instead of Plaintiff.

69. Plaintiff asked Collins why Hernandez was not reporting to her.

70. Collins told Plaintiff that he would talk to Hernandez.  He believed that Hernandez reported to Collins because Plaintiff did not interview Hernandez.

71. On one occasion, Plaintiff observed Collins and Hernandez interviewing a male applicant.

-7-

72. At the end of the interview, Hernandez brought the applicant to the front of the store and advised Plaintiff and some Sales Associates that the applicant was thinking of coming to work for Defendant.

73. Hernandez introduced Razavi to the applicant.

74. Hernandez did not introduce Plaintiff or any of the female Sales Associates present.

75. Plaintiff asked Collins whether he had an interview without involving Plaintiff.

76. Collins admitted that he "knew how it looked," but Hernandez wanted Collins to meet his friend and that the applicant had not been interviewed.

77. Collins terminated Hernandez on June 10, 2023.

78. After Hernandez's termination, Collins instructed Plaintiff to begin interviewing for another Sales Manager and to forward potential candidates to him.

79. Singh recommended four candidates to Collins, including one male and three female applicants.

80. The candidates forwarded to Collins included Alice Gonzalez, a female individual, and Dwight Burkett, a male individual.

81. At the time of the applications, Gonzalez was a Sales Associate for Ashley and had retail management experience.

82. Plaintiff was pleased with Gonzalez's performance and thought that Gonzalez would make an excellent Sales Manager.

83. Burkett had sales experience but no background in furniture sales.

84. Despite Burkett's lack of furniture sales experience, Plaintiff believed that Burkett showed great potential and could be molded into the role with her guidance.

-8-

THE McMINN EMPLOYMENT LAW FIRM, LLC

85. Plaintiff ultimately recommended Gonzalez for the Sales Manager position, but, on August 16, 2023, Collins hired Burkett.

86. Plaintiff trained Burkett in the Ashley brand, its retail five-step process, mattresses, case goods (bureaus, bookcases and the like), and sales tools and tactics that she found useful.

87. Burkett shadowed Plaintiff on the sales floor and followed her lead.

88. During the week of September 17, 2023, Burkett asked to be taught more about processing sales and financing, vendor contacts, scheduling the sales roster, making commission statements for employees, and other duties exclusive to the General Manager.

89. Plaintiff was hesitant to train Burkett in additional duties because Burkett was still learning his role as Sales Manager and the use of Ashley's sales management software.

90. During the week of September 24, 2023, Plaintiff learned that Collins gave Burkett access to Ashley's Indeed account. Businesses can use the Indeed website and application to advertise their brand and recruit new employees.

91. When Plaintiff questioned Collins about Burkett's access to the Indeed account, he responded that he wanted Burkett to be more "involved in the process."

92. Burkett began interviewing applicants without advising Plaintiff.

93. Plaintiff asked Burkett how the interviews were going. Burkett told her that there was "nothing worth mentioning."

94. Singh told Burkett that she must be kept apprised of interviews, and Burkett agreed to keep Plaintiff informed.

-9-

95. On Saturday, September 30, 2023, Plaintiff arrived and began work as usual.

96. Just before the Store opened, a man arrived and told employees that he was there for an interview with Collins.

97. Unbeknownst to Plaintiff, Collins was at the Store in the back office.

98. Plaintiff, Burkett, and staff conducted their morning huddle prior to opening the store.

99. During the huddle, Burkett received a phone call.

100. Burkett told the caller that "he was coming" and asked to be excused from the huddle. He then went to the back office.

101. On Sunday, October 1, 2023, Plaintiff arrived at work to find Collins present.

102. Plaintiff did not work on Sundays.

103. After the morning huddle, Burkett told Plaintiff that Collins was in the back office and wanted to speak with Plaintiff.

104. Collins told Plaintiff that there was no easy way for him to say what he was about to say, but unfortunately it would be Plaintiff's last day with Ashley in order to "unlock the true potential of the store." As such, Plaintiff was terminated.

105. Plaintiff was shocked, but collected her belongings, said goodbye to staff, and left.

106. Two hours later, Plaintiff received a text message from Gonzalez, the Sales Associate.

107. Gonzalez told Plaintiff that Collins announced Burkett was the new General Manager.

108. Plaintiff then received a text message from Scott, another of the Sales Associates.

109. Scott told Plaintiff that Burkett had reached out to a former employee and told them that he was the new General Manager.

**COUNT ONE**

**SEX AND/OR GENDER DISCRIMINATION,
IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

110. Plaintiff hereby incorporates Paragraphs 1-109 with the same force and impact as if fully set forth herein.

111. Defendant employs more than 15 employees.

112. Plaintiff was qualified for her position as Store General Manager.

113. Plaintiff is a member of protected classes based, inter alia, upon her female sex and/or gender.

114. Plaintiff suffered adverse employment actions, including, but not limited to, the termination of her position on October 1, 2023.

115. Plaintiff was subjected to disparate treatment, including but not limited to, termination of her position because of her female sex and/or gender.

116. Plaintiff was terminated so Defendant could retain less-qualified employees that were male.

117. There is a causal connection between Plaintiff's female sex and/or gender, and her termination, in that Defendant's Vice President of Sales, Collins, verbally expressed a preference for male sales employees, and furthermore, Collins was the supervisor that informed Plaintiff she was terminated.

118. As an employee of Defendant and Plaintiff's supervisor, Collins engaged in the above actions and statements as Defendant's agent.

-11-

119. The above discriminatory actions were taken against Plaintiff because of her female sex and/or gender.

120. Defendant violated Title VII (42 U.S.C. § 2000e et seq.) by discriminating against Plaintiff and terminating her employment on the basis of her female sex and/or gender.

121. As a result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited to, substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

122. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### SEX AND/OR GENDER DISCRIMINATION, IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(1)

123. Plaintiff hereby incorporates Paragraphs 1-122 with the same force and impact as if fully set forth herein.

124. Defendant employs one or more employees.

125. Plaintiff was qualified for her position as Store General Manager.

126. Plaintiff is a member of protected classes based, inter alia, upon her female sex and/or gender.

127. Plaintiff suffered adverse employment actions, including, but not limited to, the termination of her position on October 1, 2023.

128. Plaintiff was subjected to disparate treatment, including but not limited to, termination of her position because of her female sex and/or gender.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

129. Plaintiff was terminated so Defendant could retain less-qualified employees that were male.

130. There is a causal connection between Plaintiff's female sex and/or gender, and her termination, in that Defendant's Vice President of Sales, Collins, verbally expressed a preference for male sales employees, and furthermore, Collins was the supervisor that informed Plaintiff she was terminated.

131. As an employee of Defendant and Plaintiff's supervisor, Collins engaged in the above actions and statements as Defendant's agent.

132. The above discriminatory actions were taken against Plaintiff because of her female sex and/or gender.

133. Defendant violated Conn. Gen. Stat. § 46a-60(b)(1) by discriminating against Plaintiff and terminating her employment on the basis of her female sex and/or gender.

134. As a result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited to, substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

135. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT THREE

### RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

136. Plaintiff hereby incorporates Paragraphs 1-135 with the same force and impact as if fully set forth herein.

-13-

137. Defendant employs more than 15 employees.

138. Plaintiff engaged in protected activity by complaining in or after May 2023 to Defendant's human resources representative, Mesa, about the sex- and/or gender-based discrimination engaged in by Collins.

139. Defendant retaliated against Plaintiff by terminating Plaintiff on October 1, 2023.

140. The above retaliatory actions were taken against Plaintiff because of her complaints about Collins' discrimination to Defendant's human resources representative.

141. There is a causal connection between Plaintiff's complaints to human resources and Plaintiff's termination, including but not limited to the closeness of time of both occurrences.

142. Defendant violated 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff in this manner.

143. As a result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited to, substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

144. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### RETALIATION
### IN VIOLATION OF CONN. GEN STAT. § 46a-60(b)(4)

145. Plaintiff hereby incorporates Paragraphs 1-144 with the same force and impact as if fully set forth herein.

146. Defendant employs more than 15 employees.

-14-

147. Plaintiff engaged in protected activity by complaining in or after May 2023 to Defendant's human resources representative, Mesa, about the sex- and/or gender-based discrimination engaged in by Collins.

148. Defendant retaliated against Plaintiff by terminating Plaintiff on October 1, 2023.

149. The above retaliatory actions were taken against Plaintiff because of her complaints about Collins' discrimination to Defendant's human resources representative.

150. There is a causal connection between Plaintiff's complaints to human resources and Plaintiff's termination, including but not limited to the closeness of time of both occurrences.

151. Defendant violated Conn. Gen. Stat. § 46a-60(b)(4) by retaliating against Plaintiff in this manner.

152. As a result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited to, substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

153. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT FIVE

### AIDING AND ABETTING
### IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(5)

154. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-153 with the same force and impact as if fully set forth herein.

-15-

155. Defendants allowed Gerard Collins and Sami Abunasra to aid and abet each other's discriminatory actions against Plaintiff.

156. Defendants' acts are thus in violation of Conn. Gen. Stat. § 46a-60(b)(5).

157. As a result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited to, substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

158. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this Court award:

(a) An order requiring Defendant to restore Plaintiff to one of the positions to which she was entitled by virtue of her application and qualifications;

(b) Money damages;

(c) Costs;

(d) Punitive damages, attorney fees, and expert witness fees;

(e) Pre-judgment interest;

(f) Trial by jury; and,

(g) Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
MELLESA SINGH-SAHADEO


By: _____/s/_____

    Michael C. McMinn (#ct27169)
    **THE MCMINN EMPLOYMENT**
    **LAW FIRM, LLC**
    1000 Lafayette Blvd., Suite 1100
    Bridgeport, CT 06604
    Tel: (203) 683-6007
    Fax: (203) 680-9881
    michael@mcminnemploymentlaw.com

    *COUNSEL FOR PLAINTIFF*